IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

Antonio Moultrie,                           )        C/A No. 8:15-cv-03661-HMH-JDA
                                            )
        Petitioner,                         )
                                            )
        v.                                  )        **REPORT AND RECOMMENDATION**
                                            )        **OF MAGISTRATE JUDGE**
Joseph McFadden, Warden,                    )
                                            )
        Respondent.                         )
_____)

        This matter is before the Court on Respondent's motion for summary judgment.

[Doc. 16.]  Petitioner, proceeding pro se, is a state prisoner who seeks relief under 28

U.S.C. § 2254.  Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B), and Local Civil Rule

73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review post-trial petitions for

relief and submit findings and recommendations to the District Court.

        Petitioner filed this Petition for writ of habeas corpus on September 8, 2015.[1]  [Doc.

1.] On November 30, 2015, Respondent filed a motion for summary judgment and a return

and memorandum to the Petition.  [Docs. 15, 16.]  On December 2, 2015, the Court filed

an Order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), advising

Petitioner of the summary judgment procedure and of the possible consequences if he

failed to adequately respond to the motion.  [Doc. 17.]  Petitioner's response in opposition

was entered on the docket on February 10, 2016.  [Doc. 23.]  Respondent supplemented

the record on February 11, 2016 [Doc. 25] and filed a reply on February 22, 2016 [Doc. 27].

---

[1]A prisoner's pleading is considered filed at the moment it is delivered to prison
authorities for forwarding to the court.  *See Houston v. Lack*, 487 U.S. 266, 270 (1988).
Accordingly, this action was filed on September 8, 2015.  [Doc. 1-2 (envelope stamped as
received by prison mailroom on September 8, 2015).]

Having carefully considered the parties' submissions and the record in this case, the Court recommends Respondent's motion for summary judgment be granted.

## BACKGROUND

Petitioner is presently confined in the South Carolina Department of Corrections at Lieber Correctional Institution pursuant to orders of commitment of the Charleston County Clerk of Court. [Doc. 1 at 1.] In May 2008, Petitioner was indicted for murder. [App. 382–83.[2]] On December 1, 2008, represented by Martha Runey ("Runey") and Beattie Butler ("Butler"), Petitioner proceeded to a jury trial. [App. 1–381.] On December 4, 2008, Petitioner was found guilty. [App. 369.] He received a sentence of forty-five years imprisonment. [App. 380.]

**Direct Appeal**

Petitioner filed a notice of appeal. [Doc. 15-4.] Robert M. Dudek of the South Carolina Commission on Indigent Defense filed an amended brief on Petitioner's behalf in the South Carolina Court of Appeals, dated April 14, 2011, raising the following issue:

> Whether the court erred by admitting a portion of the 911 tape in which the decedent said, after the dispatcher asked "exactly what happened," that he was stabbed with a box cutter after an argument where the assailant came to his friend's house since this reference to past events was testimonial, where the decedent's statement that he did not have a knife was also hearsay, and this was not information necessary to handle the ongoing emergency and it was not admissible pursuant to Crawford v. Washington and Davis v. Washington?

---

[2]The Appendix can be found at Docket Entry Numbers 15-1 through 15-3.

[Doc. 15-5 at 4.]  The South Carolina Court of Appeals affirmed the conviction in an opinion that was submitted on November 1, 2011 and filed on December 5, 2011.  [Doc. 15-7.]  Remittitur was issued on December 22, 2011.  [Doc. 15-8.]

**PCR Proceedings**

Petitioner, proceeding pro se, filed an application for post-conviction relief ("PCR") on December 21, 2011.  [App. 385–91, 394–420.]  Petitioner alleged he was being held in custody unlawfully based on the following grounds, quoted substantially verbatim:

(a)    Ineffective assistance of counsel

(b)    Denial of Sixth and Fourteenth Amendments U.S. Const.

[App. 387.]  In support of his grounds, Petitioner alleged the following issues, quoted substantially verbatim:

Issue (A)    Was counsel ineffective for failing to object to the trial court's malice instructions that were unconstitutionally burden shifting in violation of due process?

Issue (B)    Was counsel ineffective for failing to object to the trial court's malice instructions that resulted in a mandatory burden shifting instruction when the trial court "failed" to instruct the jury that they may accept or reject the inference of malice from the use of a deadly weapon?

Issue (C)    Was counsel ineffective for failing to request the trial judge to instruct the jury on the King charge?

Issue (D)    Was counsel ineffective for failing to object to the burden-shifting jury instructions given by the court when the court instructed the jury on self-defense and in doing so the court instructed the jury that petitioner had the burden of establishing self-defense?

3

> Issue (E)     Was counsel ineffective for failing to object when the trial court impermissibly commented on the facts of the case: and as a result the trial court prematurely directed a verdict for the state?

[*Id.* at 396–420.] The State filed a return dated June 20, 2012. [App. 421–25.]

A hearing was held on January 22, 2013, and Petitioner was represented at the hearing by Leslie A. Sasser ("Sasser").[3] [App. 426–89.] On March 11, 2013, the PCR court filed an order denying and dismissing the PCR application with prejudice. [App. 490–502.] A notice of appeal was timely filed and served. [Doc. 15-10.]

Kathrine H. Hudgins of the South Carolina Commission on Indigent Defense filed a petition for writ of certiorari on Petitioner's behalf in the Supreme Court of South Carolina, dated December 9, 2013. [Doc. 15-11.] The petition asserted the following as the sole issue presented:

> Was trial counsel ineffective for not fully investigating shoe print evidence and requiring the State to produce the decedent's shoes prior to trial to establish that a footprint in close proximity to a knife recovered at the scene was the footprint of the decedent, supporting petitioner's claim that the decedent was in possession of the recovered knife and petitioner, with a second knife, stabbed the decedent in self defense?

[*Id.* at 3.] The court denied the petition on October 8, 2014 [Doc. 15-13] and remitted the matter to the lower court on October 24, 2014 [Doc. 15-14].

---

[3]Sasser submitted an amended PCR application, dated January 11, 2013, outlining the bases of Petitioner's ineffective assistance of counsel claims as the following: (1) failure to investigate, (2) failure to subpoena and call witnesses, (3) failure to move to suppress/object to evidence, (4) failure to object to arguments, and (5) failure to request/object to instructions. [Doc. 15-9.]

4

**State Habeas Petitions**

On November 24, 2014, Petitioner submitted a petition for original jurisdiction and a petition for writ of habeas corpus to the Supreme Court of South Carolina, asserting a claim pursuant to *State v. Belcher*, 685 S.E.2d 802 (2009). [Doc. 25-1.] The court denied the petition on January 15, 2015. [Doc. 25-2.]

On January 8, 2015, Petitioner submitted a second petition for original jurisdiction to the Supreme Court of South Carolina. [Doc. 25-3.] The court dismissed the petition on February 5, 2015. [Doc. 25-4.]

**Petition for Writ of Habeas Corpus**

Petitioner filed this Petition for writ of habeas corpus on September 8, 2015. [Doc. 1.] Petitioner raises the following grounds for relief, quoted substantially verbatim, in his Petition pursuant to 28 U.S.C. § 2254:

> **GROUND ONE:** Whether the trial court improperly admitted evidence in contravention of Crawford v. Washington and Davis v. Washington
>
> *Supporting facts*: The court erred by admitting a portion of the 911 tape in which the decedent said, after the dispatcher asked "exactly what happened," that he was stabbed with a box cutter after an argument where the assailant came to his friend's house since this reference to past events was testimonial, where the decedent's statement that he did not have a knife was also hearsay, and this was not information necessary to handle the ongoing emergency and it was not admissible purs[u]ant to Crawford v. Washington and Davis v. Washington.
>
> **GROUND TWO:** Ineffective assistance of counsel in failing to properly investigate evidence and requiring the state to produce the evidence (petitioner shoes) to establish petitioner's self-defense claim.

*Supporting facts*:    Trial counsel was ineffective for not fully investigating shoe print evidence and requiring the state to produce the decedent's shoes prior to trial to establish that a footprint in close proximity to a knife recovered at the scene was the footprint of the decedent, supporting petitioner's claim that the decedent was in possession of the recovered knife and petitioner, with a second knife stabbed the decedent in self-defense.

**GROUND THREE:**    Ineffective assistance of PCR counsel in failing to amend and raise the issue of an unconstitutional malice instruction at trial.

*Supporting facts:*    The failure to apply the unconstitutional jury instruction on the permissive inference of malice from the use of a gun holding decided in State v. Belcher to petitioner's case results in a fundamental miscarriage of justice and offends the principal bedrock of the due process clause of the Fourteenth Amendment.

[Doc. 1 at 5–8.]  As stated, on November 30, 2015, Respondent filed a motion for summary judgment.  [Doc. 16.]  On February 10, 2016, Petitioner filed a response in opposition [Doc. 30], and on February 22, 2016, Respondent filed a reply [Doc. 27].  Accordingly, the motion for summary judgment is ripe for review.

## APPLICABLE LAW

**Liberal Construction of Pro Se Petition**

Petitioner brought this action pro se, which requires the Court to liberally construe his pleadings. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978).  Pro se pleadings are held to a less stringent standard than those drafted by attorneys.  *Haines*, 404 U.S. at 520.  Even under this less stringent standard, however, the pro se petition is still subject to summary dismissal.  *Id.* at 520–21.  The mandated liberal construction means only that if the court

6

can reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999). A court may not construct the petitioner's legal arguments for him. *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this

7

standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion.  *Anderson*, 477 U.S. at 252.  Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion.  *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted."  *Anderson*, 477 U.S. at 248.  Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> >
> > (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).  Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

**Habeas Corpus**

### *Generally*

Because Petitioner filed the Petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended.  *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett,* 134 F.3d 615 (4th Cir. 1998).   Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;  or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  *Williams v. Taylor*, 529 U.S. 362, 410 (2000).   "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision," and "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011).   Moreover, state court factual determinations are presumed to be correct, and the petitioner has the burden of rebutting this presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

### *Procedural Bar*

Federal law establishes this Court's jurisdiction over habeas corpus petitions. 28 U.S.C. § 2254. This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States" and requires that a petitioner present his claim to the state's highest court with authority to decide the issue before the federal court will consider the claim. *Id.* The separate but related theories of exhaustion and procedural bypass operate to require a habeas petitioner to first submit his claims for relief to the state courts. A habeas corpus petition filed in this Court before the petitioner has appropriately exhausted available state-court remedies or has otherwise bypassed seeking relief in the state courts will be dismissed absent unusual circumstances detailed below.

### *Exhaustion*

Section 2254 contains the requirement of exhausting state-court remedies and provides as follows:

> (b)   (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—
>
> > (A) the applicant has exhausted the remedies available in the courts of the State; or
> >
> > (B)   (I) there is an absence of available State corrective process; or
> >
> > (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
>
> (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

(3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254. The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies. *Id.* § 2254(b)(1)(A). "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court." *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997). Thus, a federal court may consider only those issues that have been properly presented to the highest state courts with jurisdiction to decide them.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal, or (2) by filing an application for PCR. State law requires that all grounds for relief be stated in the direct appeal or PCR application. S.C. App. Ct. R. 203; S.C. Code Ann. § 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d 767, 770 (S.C. 1976). If the PCR court fails to address a claim as required by S.C. Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment. S.C. R. Civ. P. 59(e). Failure to do so will result in the application of a procedural bar to that claim by the Supreme Court of South Carolina. *Marlar v. State*, 653 S.E.2d 266 (S.C. 2007).[4] Further, strict time deadlines govern direct appeal and the filing

---

[4]In *Bostick v. Stevenson*, 589 F.3d 160 (4th Cir. 2009), the Fourth Circuit found that, prior to the Supreme Court of South Carolina's November 5, 2007 decision in *Marlar*, South Carolina courts had not uniformly and strictly enforced the failure to file a motion pursuant

of a PCR application in the South Carolina courts.  For direct appeal, a notice of appeal must be filed and served on all respondents within ten days after the sentence is imposed or after receiving written notice of entry of the order or judgment.  S.C. App. Ct. R. 203(b)(2), (d)(1)(B).  A PCR application must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision.  S.C. Code Ann. § 17-27-45.

If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts.  *Richardson v. Turner*, 716 F.2d 1059, 1062 (4th Cir. 1983); *Patterson v. Leeke*, 556 F.2d 1168 (4th Cir. 1977).  Therefore, in a federal petition for habeas relief, a petitioner may present only those issues that were presented to the Supreme Court of South Carolina through direct appeal or through an appeal from the denial of a PCR application, regardless of whether the Supreme Court actually reached the merits of the claim.

*Procedural Bypass*

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner seeks habeas corpus relief based on an issue he failed to raise at the appropriate time in state court, removing any further means of bringing that issue before the state courts.  In such a situation, the petitioner has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition.  *See Smith v. Murray*, 477 U.S. 527, 533 (1986).  The United States Supreme

---

to Rule 59(e) as a procedural bar.  589 F.3d at 162–65.  Accordingly, for matters in which there was a PCR ruling prior to November 5, 2007, the Court will not consider any failure to raise issues pursuant to Rule 59(e) to effect a procedural bar.

Court has stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *See id.* Bypass can occur at any level of the state proceedings if a state has procedural rules that bar its courts from considering claims not raised in a timely fashion. *Id.*

The Supreme Court of South Carolina will refuse to consider claims raised in a second appeal that could have been raised at an earlier time. *See* S.C. Code Ann. § 17-27-90; *Aice v. State*, 409 S.E.2d 392, 394 (S.C. 1991). Further, if a prisoner has failed to file a direct appeal or a PCR application and the deadlines for filing have passed, he is barred from proceeding in state court. S.C. App. Ct. R. 203(d)(3), 243. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. *See Reed v. Ross*, 468 U.S. 1, 11 (1984); *see also Kornahrens v. Evatt*, 66 F.3d 1350, 1357 (4th Cir. 1995). As the United States Supreme Court explained:

> . . . [State procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed*, 468 U.S. at 10–11.

However, if a federal habeas petitioner can show both (1) "'cause' for noncompliance with the state rule" and (2) "'actual prejudice resulting from the alleged constitutional violation[,]'" the federal court may consider the claim. *Smith*, 477 U.S. at 533 (quoting *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977)). When a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim. *Murray v. Carrier*, 477

13

U.S. 478, 496 (1986).  Further, if the petitioner does not raise cause and prejudice, the court need not consider the defaulted claim.  *See Kornahrens*, 66 F.3d at 1363.

If a federal habeas petitioner has failed to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court.  *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991).  Absent a showing of cause and actual prejudice, a federal court is barred from considering the claim.  *Wainwright*, 433 U.S. at 87.  In such an instance, the exhaustion requirement is technically met, and the rules of procedural bar apply.  *Teague v. Lane*, 489 U.S. 288, 297–98 (1989); *Matthews*, 105 F.3d at 915 (citing *Coleman*, 501 U.S. at 735 n.1; *Teague*, 489 U.S. at 297–98; *George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996); *Bassette v. Thompson*, 915 F.2d 932, 937 (4th Cir. 1990)).

### Cause and Actual Prejudice

Because the requirement of exhaustion is not jurisdictional, this Court may consider claims that have not been presented to the Supreme Court of South Carolina in limited circumstances—where a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or where a "fundamental miscarriage of justice" has occurred, *Carrier*, 477 U.S. at 495–96.  A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim, where the novelty of the constitutional claim is such that its legal basis is not reasonably available to the petitioner's counsel.  *Id.* at 487–89; *Reed*, 468 U.S. at 16.  Absent a showing of "cause," the court is not required to consider "actual prejudice."  *Turner v. Jabe*, 58 F.3d 924, 931 (4th Cir. 1995).  However,

14

if a petitioner demonstrates sufficient cause, he must also show actual prejudice to excuse a default. *Carrier*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error. *Engle v. Isaac*, 456 U.S. 107, 134–35 (1982).

## DISCUSSION

Under the AEDPA, a federal court may not grant habeas relief unless the underlying state court decision was contrary to or an unreasonable application of federal law, as determined by the United States Supreme Court, 28 U.S.C. § 2254(d)(1), or based on an unreasonable determination of the facts before the court, *id.* § 2254(d)(2). The Supreme Court has held the "contrary to" and "unreasonable application of" clauses present two different avenues for relief. *Williams*, 529 U.S. at 405 ("The Court of Appeals for the Fourth Circuit properly accorded both the 'contrary to' and 'unreasonable application' clauses independent meaning."). The Court stated there are two instances when a state court decision will be contrary to Supreme Court precedent:

> A state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . . A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent.

*Id.* at 405–06. On the other hand, a state court decision is an unreasonable application of Supreme Court precedent when the decision "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Id.* at 407–08; *see also Richter*, 131 S. Ct. at 786 ("Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's

15

decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court. . . . It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable.").  Finally, a decision cannot be contrary to or an unreasonable application of Supreme Court precedent unless applicable Supreme Court precedent exists; without applicable Supreme Court precedent, there is no habeas relief for petitioners.  *Virsnieks v. Smith*, 521 F.3d 707, 716 (7th Cir. 2008) (citing *Lockhart v. Chandler*, 446 F.3d 721, 724 (7th Cir. 2006); *Simpson v. Battaglia*, 458 F.3d 585, 597 (7th Cir. 2006)); *see Bustos v. White*, 521 F.3d 321, 325 (4th Cir. 2008).

**Ground One**

In Ground One, Petitioner argues that his right to confront his accusers was violated when the trial court admitted into evidence a portion of the 911 tape in which the decedent said, in response to a question by the dispatcher, that he was stabbed with a box cutter after an argument where the assailant came to his friend's house.  [Doc. 1 at 5.]  Petitioner contends this statement was testimonial and, therefore, not admissible pursuant to *Crawford v. Washington*, 541 U.S. 36 (2004), and *Davis v. Washington*, 547 U.S. 813 (2006).  [*Id.*]

The Confrontation Clause permits the admission of "[t]estimonial statements of witnesses absent from trial . . . only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine."  *Crawford v. Washington*, 541 U.S. 36, 59 (2004).  The *Crawford* Court explicitly "le[ft] for another day any effort to spell out a comprehensive definition of 'testimonial.'"  *Id.* at 68.  However, the Court held that, "at a minimum," the term applies "to prior testimony at a preliminary hearing, before a grand

jury, or at a former trial; and to police interrogations." *Id.* The Court also set forth three

formulations of the "core class of 'testimonial' statements":

> [1] *ex parte* in-court testimony or its functional equivalent—that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially, [2] extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions, [and 3] statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.

*Id.* at 51–52 (internal quotation and citations omitted) (one alteration in original).

Two years later, in *Davis v. Washington*, the Supreme Court further explained the

meaning of "testimonial" as follows:

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

*Davis*, 547 U.S. at 822. The *Davis* Court held that statements made to a 911 operator

during an emergency were non-testimonial. *Id.* at 829.

Here, the trial judge addressed the 911 tape under the standards set forth in

*Crawford* and *Davis* and found the 911 tape to be nontestimonial. [App. 65.] The South

Carolina Court of Appeals, citing *Crawford* and *Davis*, affirmed. [Doc. 15-7.] The state

court's decision was neither contrary to nor an unreasonable application of applicable

Supreme Court precedent. First, the state courts applied the *Crawford* and *Davis*

standards, which are the applicable Supreme Court precedents. Second, the record fails

to demonstrate the state courts confronted a set of facts that were materially indistinguishable from those considered in a decision of the Supreme Court but arrived at a result different from the Supreme Court precedent.  Petitioner has not established that any questioning during the 911 call was an attempt "to establish or prove past events potentially relevant to later criminal prosecution."  *See Davis*, 547 U.S. at 829.  Thus, the Court concludes the state court's decision was not contrary to or an unreasonable application of applicable Supreme Court precedent.

**Ground Two**

In Ground Two, Petitioner argues trial counsel were ineffective for failing to investigate shoe print evidence and failing to require the State to produce the decedent's shoes before trial. [Doc. 1 at 7.] Petitioner contends this evidence would have established that a footprint in close proximity to a knife recovered at the scene was the footprint of the decedent, which would have supported Petitioner's claim that the decedent was in possession of the knife and Petitioner stabbed the decedent in self defense.  [*Id.*]

When evaluating a habeas petition based on a claim of ineffective assistance of counsel, assuming the state court applied the correct legal standard—the Supreme Court's holdings in *Strickland v. Washington*, 466 U.S. 668 (1984)—"[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable.  This is different from asking whether defense counsel's performance fell below *Strickland*'s standard."[5]  *Richter*, 131 S.Ct. at 785.  "A state court must be granted a deference and

---

[5]In *Strickland v. Washington*, the United States Supreme Court established that to challenge a conviction based on ineffective assistance of counsel, a prisoner must prove two elements: (1) his counsel was deficient in his representation and (2) he was prejudiced as a result.  466 U.S. 668, 687 (1984).  To satisfy the first prong, a prisoner must show that

latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id.*; *see also Yarborough v. Gentry*, 540 U.S. 1, 6 (2003) (stating judicial review of counsel's performance is "doubly deferential when it is conducted through the lens of federal habeas"). Even if a state court decision questionably constitutes an unreasonable application of federal law, the "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Richter*, 131 S.Ct. at 786 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Thus, in such situations, the habeas court must determine whether it is possible for fairminded jurists to disagree that the arguments or theories supporting the state court's decision are inconsistent with Supreme Court precedent. *Id.*

Here, the PCR court addressed trial counsels' performance under the standard set forth in *Strickland*. [App. 495–501.] With respect to Ground Two, the PCR court found,

> This Court finds the Applicant failed to meet his burden of proving trial counsel was ineffective for failing to investigate the victim's shoe prints. While counsel testified at the evidentiary hearing they should have investigated further the footprint impressions prior to trial, both testified they were unaware the footprint impressions would be an issue until it was raised through a line of questioning elicited by the State during the Applicant's trial. Both also testified they were able to prepare the Applicant's self-defense claim without the footprint impression evidence.

---

"counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. To satisfy the second prong, a prisoner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 692. The Court cautioned that "[j]udicial scrutiny of counsel's performance must be highly deferential," and "[b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

In <u>Strickland v. Washington</u>, the United States Supreme Court cautioned courts against weighing counsel's performance in light of "the distorting effects of hindsight." 466 U.S. 668, 689, 104 S. Ct. 2052, 2065, 80 L. Ed. 2d 674 (1984). The Court stated that while "the Sixth Amendment imposes on counsel a duty to investigate", "counsel's investigatory decisions must be assessed in light of the information known at the time of the decisions, not in hindsight." <u>Id.</u> at 680, 104 S. Ct. at 2060–61, 80 L. Ed. 2d 674. The Court opined further that "[a]fter an adverse verdict at trial even the most experienced counsel may find it difficult to resist asking whether a different strategy might have been better, and, in the course of that reflection, to magnify their own responsibility for an unfavorable outcome." <u>Id.</u> at 689, 104 S. Ct. at 2065, 80 L. Ed. 2d 674. This Court finds that in light of the evidence counsel anticipated would be presented by the State during to trial, counsel was able to adequately prepare a defense and proceed to trial on the basis on the Applicant's self-defense claim without further consideration of the footprint impressions.

This Court also finds counsel was not ineffective for failing to investigate the possibility that the victim's shoes matched the footprint impression taken at the scene. Failure to conduct an independent investigation does not constitute ineffective assistance of counsel when the allegation is supported only by mere speculation as to result. <u>Porter v. State</u>, 368 S.C. 378, 385–86, 629 S.E.2d 353, 357 (2006). Counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments. <u>Wiggins v. Smith</u>, 539 U.S. 510, 521–22, 123 S. Ct. 2527, 2535, 156 L.Ed. 2d 471 (2003).

Counsel gave credible testimony that she was aware prior to trial that the applicant's shoeprint did not match the footprint impression taken from the scene. Further investigation into whether the footprint impression at the scene matched the shoeprint of the victim was not necessary as the record and the Applicant's testimony at trial reflects that the victim and the defendant were the only persons present during the incident. It is cognizable that during counsels' investigation of the Applicant's footprint impressions, counsel logically

deducted that if the prints were not that of the Applicant they were the victim's footprint which would not warrant any further investigation. This Court finds that the Applicant has presented no evidence showing what would have resulted had counsel investigated whether the victim's shoeprint matched the footprint impressions taken at the scene. This Court finds counsel made a reasonably independent investigation of the facts surrounding the Applicant's case prior to trial and fully investigated all evidence that would assist with the presentation of a self-defense claim at trial. Therefore, this Court finds the Applicant has failed to carry his burden of proving counsel was ineffective for failing to investigate the possibility that the footprint impressions found at the scene belonged to the victim.

This Court further finds counsel was not ineffective for failing to hire a footprint impression expert for trial. The South Carolina Supreme Court has repeatedly held "a PCR applicant *must produce the testimony* of a favorable witness *or otherwise offer the testimony in accordance with the rules of evidence* at the PCR hearing in order to establish prejudice from the witness' failure to testify at trial." Bannister v. State, 333 S.C. 298, 303, 509 S.E.2d 807, 809 (1998) (emphasis in original). "The applicant's mere speculation what the witnesses' testimony would have been cannot, by itself, satisfy the applicant's burden of showing prejudice." Id. Counsel gave credible testimony that while a footprint impression expert could have been helpful at trial, he was unsure if he would have called a footprint impression to testify on the Applicant's behalf. This Court finds the Applicant has failed to carry his burden of showing that counsel's performance was deficient because no expert witness was present at the PCR hearing to give an opinion on the footprint evidence making the substance of the expert's testimony merely speculative.

[App. 498–501.]

The PCR court's denial of Petitioner's ineffective assistance claim was neither contrary to nor an unreasonable application of applicable Supreme Court precedent. First, the PCR court applied the *Strickland* standard, which is the applicable Supreme Court precedent. Second, the record fails to demonstrate the PCR court confronted a set of facts

21

that were materially indistinguishable from those considered in a decision of the Supreme Court but arrived at a result different from the Supreme Court precedent. Thus, the Court concludes the PCR court's decision was not contrary to or an unreasonable application of applicable Supreme Court precedent.

Further, the record supports the PCR court's decision, which demonstrates the PCR court's decision was not an unreasonable application of *Strickland*. The facts supporting the PCR court's reasoning are well founded in the testimony at trial and at the PCR hearing. [*See, e.g.*, App. 261–63, 433–44, 449–50, 459–61, 468–69, 472.] Therefore, Petitioner has not established that the PCR court's decision was contrary to or an unreasonable application of applicable Supreme Court precedent, and Petitioner is not entitled to habeas corpus relief based on this ground.

**Ground Three**

In Ground Three, Petitioner argues PCR counsel was ineffective for failing to amend and raise the issue of an unconstitutional malice instruction. [*Id.* at 8.] However, "[t]he ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254." 28 U.S.C. § 2254(i); *see also Martinez*, --- U.S. ---, 132 S.Ct. 1309, 1315, 1320 (2012) (stating that, "while § 2254(i) precludes [a petitioner] from relying on the ineffectiveness of his postconviction attorney as a 'ground for relief,' it does not stop [a petitioner] from using it to establish 'cause' " and holding that a petitioner may establish cause for defaulting an ineffective assistance of trial counsel claim by demonstrating his

postconviction attorney was ineffective).   Therefore, Petitioner is not entitled to federal habeas relief as to Ground Three because it is not a cognizable federal habeas claim.[6]

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends that Respondent's motion for summary judgment be GRANTED and the Petition be DENIED.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

July 13, 2016
Greenville, South Carolina

---

[6]Although the undersigned finds that Petitioner continues to present this claim as one of ineffective assistance of PCR counsel in his response in opposition to the motion for summary judgment, to the extent he attempts to raise it as an ineffective assistance of trial counsel claim in his response [see Doc. 23 at 33 ("Where trial counsel has failed to enter a timely objection to a trial issue, it becomes a matter of ineffective assistance of counsel and is thus the duty of post-conviction counsel to properly amend the application to encompass all claims of merit.") (footnote omitted)], the Court will not address this argument because new matters cannot be raised in a response in opposition to a motion for summary judgment, see Temple v. Oconee Cty., No. 6:13-144-JFA-KFM, 2014 WL 4417702, at *13 (D.S.C. Sept. 8, 2014) (citing White v. Roche Biomedical Labs., 807 F.Supp. 1212, 1216 (D.S.C. 1992)).  The Petition raises the issue only as one of ineffective assistance of PCR counsel.  [Doc. 1 at 8.]